UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| SIERRA NEVADA SW ENTERPRISES, LTD. et al., | ) ) ) | |
| Plaintiffs, | ) ) | 3:10-CV-354-RCJ-RAM |
| vs. | ) ) | **ORDER** |
| DOUGLAS COUNTY et al., | ) ) | |
| Defendants. | ) ) | |

This case arises out of the Douglas County Board's (the "Board") approval of an amendment to the 1996 Douglas County Master Plan (the "Master Plan") and attendant zoning changes in favor of non-party developer Peri Enterprises, LLC ("Peri"). Pending before the Court is Defendants' Motion for Judgment on the Pleadings (ECF No. 19). For the reasons given herein, the Court grants the motion with leave to amend the first, third, and seventh claims.

I.   FACTS AND PROCEDURAL HISTORY

Plaintiffs Sierra Nevada SW Enterprises, Ltd. ("Sierra Nevada") and Nevada Northwest, LLC are business entities who complain that the Board granted Peri certain exemptions from obligations under the Douglas County Code (the "DCC") that it did not grant others similarly situated. (*See* Compl. ¶¶ 1, 4). Plaintiffs allege they purchased millions of dollars worth of

1  transferable development rights ("TDR")[1] under the DCC for the purpose of using them for
2  developments and selling them at a profit to other developers such as Peri, but that the
3  Commission's amendment of the Master Plan and zoning map (the "Amendments") to permit
4  Peri to engage in certain developments without purchasing TDR frustrated Plaintiffs' goals,
5  diminishing or destroying the value of the TDR they had purchased. (*See id.* ¶ 4).

### A. The Muller Parkway Project

U.S. Route 395 runs generally north–south from the U.S.–Canada border to the northeastern suburbs of Los Angeles, California near Fort Irwin. It passes through western Nevada for approximately ninety miles, entering Nevada from California approximately fifteen miles northwest of Reno and running southward through the centers of Reno, Carson City, Indian Hills, Minden, and Gardnerville, sequentially, before reentering California at Topaz Lake. In order to alleviate traffic congestion in Minden and Gardnerville, in which towns Route 395 is confluent with Main Street, Douglas County proposed a bypass to the east of the towns called Muller Parkway. (*See* Compl. ¶ 12). Plaintiff Nevada Northwest owns property at the northern terminus of the proposed bypass; Plaintiff Sierra Nevada owns property near the southern terminus; and Peri owns property at the southern terminus. (*Id.* ¶¶ 13–14).

### B. The TDR System: Sending and Receiving Areas

Prior to the Amendments, portions of Nevada Northwest's and Peri's property, and all of Sierra Nevada's property, were within the "Receiving Area" under the Master Plan, which required the owners to acquire and dedicate TDR under DCC section 20.500. (*Id.* ¶¶ 15–16). The Receiving Area is so named because it is the area to which TDR may be transferred. DCC section 20.500 does not on its face require owners of property in the Receiving Area to purchase TDR, as Plaintiffs claim, but only notes that development rights may be transferred from

---

[1] The Douglas County Code calls them "transfer development rights." *See* Douglas County Code § 20.500, *available at* http://dcnvda.org/userpages/CountyCodes.aspx.

property in A-19 and FR-19 districts[2] to property in the Receiving Area, *see* Douglas County Code § 20.500.010(A), and that the owner of property in the Receiving Area may not transfer more TDR to a parcel therein than the density provided by the base zoning district, *see id.* § 20.500.010(D). It appears that development permits are initially acquired through a traditional application system. *See id.* § 20.02. Fees are charged for the processing of applications, *see id.* § 20.40, and impact fees may be charged according to Nevada Revised Statutes ("NRS") Chapter 278B, *see id.* § 20.300.

The "Sending Area" under the Master Plan is the area from which TDR may be transferred. Under the DCC, the owner of a parcel of land in the Sending Area may sell or otherwise transfer as many development rights as he has in the parcel under the Master Plan, including "bonuses" provided under Chapter 20 of the DCC. *See id.* § 20.500.010(B). The Sending Area–Receiving Area–TDR system allows farmers or other owners of land in the Sending Area to sell development rights to developers owning land in the Receiving Area. However, in exchange for the right to sell the development rights, DCC requires the transferor to "record a deed restriction or grant a perpetual open space easement to the county, a local governmental agency approved by the board, or a nonprofit conservation entity . . . ." *Id.* § 20.500.020. Plaintiffs refer to these restrictions or easements given in exchange for the right to sell TDR as "conservation easements." (*See* Compl. ¶ 19).

**C.     The Specific Plans**

Under the DCC, any entity wishing to develop more than 160 acres within the Receiving

---

[2]A-19 districts are made of agricultural parcels of at least nineteen acres. *See id.* § 20.650.010(A)(1). FR-19 districts are made of forest and range parcels of at least nineteen acres. *See id.* § 20.650.010(A)(2). The A-19 and FR-19 land use districts were designated in order to implement the Master Plan, conserve agricultural resources and rural areas, preserve open spaces and grazing land, and to direct urbanization. *See* § 20.650.010(A)(1), (2).

Area must obtain approval for a "specific plan." *See* DCC § 20.612.010.[3]  "Specific plans in receiving areas must use transfer development rights in connection with any change in intensity or density of use, including any change to a residential, commercial or industrial zoning district or combination thereof." *Id.*  In other words, although an owner of land within the Receiving Area need not purchase development rights (because it need not develop anything), if it does wish to develop more than 160 acres on those lands, it must obtain its development rights through the TDR system as opposed to applying for them directly. *See id.*  This appears to be why Plaintiffs allege that owners of land in the Receiving Area "must" acquire and dedicate TDR.  They must, but only if they wish to develop more than 160 acres within the Receiving Area. *See id.*  The Board, which considers the recommendation of the County Planning Commission (the "Commission"), is the final approval authority. *See id.* § 20.612.030.

When Nevada Northwest purchased its land, it was zoned variously as A-19, Neighborhood Commercial, and Multi-family Residential, and the A-19 land was within the Receiving Area. (Compl. ¶ 21).  The Board approved the Nevada Northwest Specific Plan ("NNSP") in 2001. (*Id.* ¶ 22).  Nevada Northwest was required to use TDR to develop the 21.66 acres of its land zoned Multi-family Residential located within the Receiving Area. (*Id.* ¶¶ 24–25).  Nevada Northwest was also required to construct the segment of Muller Parkway that traverses its land from Route 395 to its eastern property line. (*Id.* ¶ 25).

Sierra Nevada owns 225 acres of land within the Receiving Area. (*Id.* ¶ 27).  In late 2004, the Board approved Sierra Nevada's Virginia Ranch Specific Plan ("VRSP"), which required the use of TDR to develop the land and the construction of that segment of Muller Parkway that traverses Sierra Nevada's land. (*Id.* ¶ 28).  Sierra Nevada later obtained approval of the Virginia Ranch Commercial Planned Development ("VRCPD") to develop 24.84 acres within the

---

[3]Specific plans are optional for developments over forty acres or which involve subdivisions or planned developments. *See id.*

Receiving Area. (*Id.* ¶ 29). Sierra Nevada was required to construct the segment of Muller Parkway adjacent to the planned development site and to use TDR for the development. (*Id.* ¶ 30). Because commercial development in the Receiving Area required the use of ten TDR per acre of development, Sierra Nevada "or its related entities" committed 185 TDR to construction of the segment of Muller Parkway required under the VRCPD. (*Id.*).

### D. Plaintiffs' Acquisition of TDR

In order to carry out their approved developments, Plaintiffs acquired approximately 2000 TDR, which had a total market value of approximately $12 million as of June 11, 2010. (*See id.* ¶¶ 31–32). The VRSP will require dedication of at least 1600 TDR worth approximately $9.6 million. (*Id.* ¶ 34). The VRCPD will require dedication of at least 250 TDR worth approximately $1.5 million. (*Id.* ¶ 33). This leaves 150 TDR, and Plaintiffs do not allege how many of these are needed for the NNSP. It seems doubtful they will have any TDR left over after development.

### E. The Peri Development Agreement

On December 3, 2009, the Board approved the Peri Development Agreement ("PDA"), which concerned 37.75 acres of Peri's land within the Receiving Area. (*Id.* ¶ 35). The PDA provided that if Peri were ultimately successful in obtaining a Master Plan amendment and zoning change of 61.57 acres of its land from Receiving Area to General Commercial, it would construct the segment of Muller Parkway traversing its land. (*Id.* ¶ 37). In other words, rather than apply for a specific plan to construct a portion of the Muller Parkway using TDR, as Plaintiffs did, Peri applied for a specific plan under which it would agree to construct its segment of the Muller Parkway if it were successful in obtaining a zoning change that would obviate the need for it to obtain the approximately 370 TDR it would otherwise have needed to develop its segment of Muller Parkway, saving Peri $2.22 million. (*See id.* ¶ 38). Sierra Nevada did not receive personal notice of the hearing at which the PDA was approved. (*Id.* ¶ 36). The Board approved the requested amendments to the Master Plan and introduced Ordinance 2010-1314

(the "Ordinance") to amend the zoning map on May 6, 2010. (*Id.* ¶¶ 39–40). The Board approved the Ordinance on June 3, 2010. (*Id.* ¶ 41). This approval bound Peri to construct its segment of Muller Parkway and relieved it of any obligation to obtain TDR to do so. (*Id.* ¶ 42).

Plaintiffs seek to hold liable: (1) Douglas County itself; (2) Douglas County Community Development Director Mimi Moss, who made recommendations to the Board; (3) Douglas County Commissioners Michael A. Olson, David J. Brady, Nancy McDermid, Greg Lynn, and Doug N. Johnson, who voted to approve the plans; and (4) Douglas County Manager T. Michael Brown, based on his "implicit[] approv[al]" of the Board's actions. (*See id.* ¶ 43). Plaintiffs bring nine causes of action: (1) Fourteenth Amendment (Substantive Due Proces); (2) Fourteenth Amendment (Procedural Due Process); (3) Fourteenth Amendment (Equal Protection); (4) "Police Power" Violations; (5) Declaratory Relief; (6) Declaratory and Injunctive Relief; (7) Fourteenth Amendment (Due Process (Vagueness)); (8) Declaratory Relief; and (9) Fifth Amendment (Takings).[4] Defendants have moved for judgment on the pleadings.

## II.  LEGAL STANDARDS

### A.   Rule 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standards governing a Rule 12(c) motion are the same as those governing a Rule 12(b)(6) motion. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference . . . is the time of filing. [T]he motions are functionally identical . . . .").

A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to

---

[4] Although Plaintiffs invoke the Fifth Amendment under several claims, it is only applicable to the ninth claim, wherein the Takings Clause of the Fifth Amendment is properly invoked as incorporated by the Fourteenth Amendment. The other due process claims that invoke the Fifth Amendment are actionable against state actors directly under the Due Process Clause of the Fourteenth Amendment, without resort to incorporation.

dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, a court takes all material allegations as true and construes them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). A court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a claim is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations omitted).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting it into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Also, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

///

**B.     42 U.S.C. § 1983**

1    To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). There is no respondeat superior liability under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In order to hold a municipality liable under *Monell* for declaratory, injunctive, or monetary relief, the allegedly unconstitutional actions must have been pursuant to an official municipal policy, ordinance, regulation, or officially adopted decision. *Id.* at 690–91.

> In a *Monell* claim, there are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (citations and internal quotation marks omitted).

Finally, natural persons sued in their individual capacities, but not municipalities or natural persons sued in their official capacities, may have qualified immunity against claims of constitutional violations. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). An official is not entitled to qualified immunity if: (1) there has been a constitutional violation; and (2) the state of the law was clear enough at the time of the violation that a reasonable person in the defendant's position would have known his actions violated the plaintiff's rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court has discretion to analyze the second prong first in order to avoid unnecessary constitutional rulings. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009). A "clearly established" right for the purpose of qualified immunity is one that has been announced by the Supreme Court or an applicable Court of Appeals, i.e., binding authority. *See Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004).

## III.   ANALYSIS

Defendants first attack all claims but the seventh by noting that NRS section 278.035 precludes any action against the Board for its actions taken pursuant to NRS sections 278.010 or 278.630 unless brought within twenty-five days of the challenged decision. The Complaint was filed on June 11, 2010, only eight days after the Board is alleged to have approved the Ordinance adopting the PDA but six months after the Board approved the PDA itself. This defense fails. Until the Board approved the Ordinance, its decision was not final because a necessary condition of the PDA had not yet come about. The Board could have denied approval of the Ordinance, which would have made the PDA unenforceable for nonoccurrence of a condition precedent. Also, the state law discretionary immunities invoked by Defendants have no force against the federal constitutional claims. Finally, Defendants assert qualified immunity against the § 1983 claims. This defense will not be addressed at this time, as all claims are dismissed for other reasons. This defense will be addressed if and when Plaintiffs attempt to cure the deficiencies in the Complaint.

### A.   Fourteenth Amendment

#### 1.   Substantive Due Process (First Claim)

Plaintiffs allege Defendants' conduct was so "outrageously arbitrary" that it violated substantive due process. (*See* Compl. ¶ 46). Plaintiffs also allege Douglas County has a custom or policy of such violations.

If a claim can be analyzed under a specific right in the Constitution, resort to a generalized substantive due process claim is unavailable. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). However, a land use claim can be entertained as a substantive due process claim. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005). "To maintain a substantive due process claim, [a plaintiff] must show that [a municipal authority's zoning decisions or procedures] lacked a rational relationship to a government interest." *N. Pacifica LLC v. City of*

*Pacifica*, 526 F.3d 478, 485 (9th Cir. 2008) (citing *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007); *Christensen v. Yolo Cnty. Bd. of Supervisors*, 995 F.2d 161, 165 (9th Cir. 1993)). "When executive action like a discrete permitting decision is at issue, only egregious official conduct can be said to be arbitrary in the constitutional sense: it must amount to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective." *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008) (internal quotation marks omitted). *Cf. Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1086 (9th Cir. 2001) ("[B]arring irrational or arbitrary conduct, Congress can adjust the incidents of our economic lives as it sees fit. . . . Indeed, the Supreme Court has not blanched when settled economic expectations were upset, as long as the legislature was pursuing a rational policy." (citations omitted)).

First, the *Monell* claim against the County is implausible. No facts establishing any pattern of behavior are pled anywhere in the Complaint, which is limited to allegations surrounding Plaintiffs' and Peri's applications for development plans related to Muller Parkway in the Receiving Area.

Second, as to the individual Defendants, the governmental interest here is the construction of Muller Parkway, and the rational relationship between the Board's approval of the PDA and the construction of Muller Parkway is that Peri apparently only agreed to perform the construction if it were successful in obtaining a re-zoning of its land so that it wouldn't have to purchase TDR. Plaintiff alleges no fraud, bribery, or other species of improper collusion or favoritism. And Defendants note that Peri is required under the PDA to complete certain improvements at no additional cost, such as the realignment of Pinenut Road and the installation of traffic lights. Under the PDA, if Peri fails to complete the required additional improvements within seven years, it will be required to provide the County with 376 TDR, the amount required for the County to complete the improvements itself or hire a contractor to do so. The Board's

actions easily pass muster under the rational basis test on the facts as currently pled. The Court dismisses this claim, with leave to amend.

### 2. Procedural Due Process (Second Claim)

Plaintiffs allege a procedural due process violation via the Board's failure to notify Sierra Nevada of the hearing at which it considered the PDA. (*See* Compl. ¶ 48). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). "[S]ome form of hearing is required before an individual is finally deprived of a property interest." *Id.* at 333.

DCC section 20.20.030 requires personal notice for public hearings in accordance with NRS Chapter 278. NRS section 278.260 in turn requires certain notices prior to hearings over the amendment of zoning maps. Several types of notice are potentially applicable in this case. First, notice must be published in an official newspaper or a newspaper of general circulation in the city, county, or region at least ten days before the hearing. Nev. Rev. Stat. § 278.260(2)(a). Second, for a change in the boundary of a zoning district in a county with a population of under 100,000[5] notice must be sent at least ten days before the hearing to each owner of real property within 300 feet of the portion of the boundary being changed and to the owners of each of the thirty separately owned parcels nearest to the portion of the boundary being changed. *Id.* § 278.260(3)(b), (c).

Sierra Nevada implicitly alleges its property is within the notice areas with respect to the PDA hearing and that it did not receive personal notice. The problem with this claim is that Plaintiffs fail to allege the loss of any liberty or property interest via the Board's alleged failure to give the required notice. Unlike cases where a company loses a contract bid because of improprieties in the bidding process, here Plaintiffs do not allege they stood to gain anything by a

---

[5]Douglas County has fewer than 100,000 residents.

1  different outcome of the hearing on the PDA except for the psychological satisfaction they might
2  have experienced had Peri failed to obtain the zoning change.  Plaintiffs have no cognizable
3  property or liberty interest in schadenfreude.  Although targeted land-use decisions are subject to
4  the requirements of due process, only those whose permissible use of their own land is affected
5  have standing to challenge such decisions. *See Harris v. County of Riverside*, 904 F.2d 497,
6  504–05 (9th Cir. 1990).  It also seems unlikely Plaintiffs will have any TDR remaining to sell
7  after development.  The amount of TDR required and purchased seems to be inherently tied to
8  approved specific plans under the Master Plan and DCC.

9  **3.     Equal Protection (Third Claim)**

10  "Although state action that does not implicate a fundamental right or suspect
11  classification passes constitutional muster under the equal protection clause so long as it bears
12  a rational relation to a legitimate state interest, 'the rational relation test will not sustain conduct
13  by state officials that is malicious, irrational, or plainly arbitrary.'" *Armendariz v. Penman*, 75
14  F.3d 1311, 1326 (9th Cir. 1996) (citations omitted); *see also City of Cleburne v. Cleburne Living
15  Ctr.*, 473 U.S. 432, 440 (1985).  It is also possible to maintain an equal protection claim as a
16  "class of one" where a plaintiff alleges he has been "intentionally treated differently from others
17  similarly situated and that there is no rational basis for the difference in the treatment." *Vill. of
18  Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The Ninth Circuit has noted, however, that it
19  will not treat what is in substance a garden-variety, rational-basis equal protection claim as a
20  "class of one" equal protection claim. *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th
21  Cir. 2008) (holding that a plaintiff's claim of unequal treatment based on its perceived
22  associations with conservationists and newcomer status was based on a classification, not unique
23  treatment).  In such cases, a court must look closely to see if the complaint is based on "unique
24  treatment" versus a "classification." *See id.*  "Class of one" claims must assert that discriminatory
25  treatment was intentionally directed only at the plaintiff. *N. Pacifica LLC v. City of Pacifica*, 526

1  F.3d 478, 486 (9th Cir. 2008).  State action survives rational basis review if "there is any
2  reasonably conceivable state of facts that could provide a rational basis for the challenged law."
3  *Merrifield v. Lockyer*, 547 F.3d 978, 989 (9th Cir. 2008) (quoting *FCC v. Beach Commc'ns, Inc.*,
4  508 U.S. 307, 313 (1993)) (internal quotation marks omitted).

5      Plaintiffs do not allege they have been denied a fundamental right and do not claim to be
6  part of a suspect class.  Rather, they allege they have been "treated . . . differently" from Peri,
7  though both were similarly situated.  This claim, because it is essentially a "class of one"-type
8  claim, fails for the same reason the substantive due process claim fails.  The reasonably
9  conceivable basis for the challenged action is that the Board could only get enough contractors to
10  complete the project if it granted Peri's requested zoning change.  Plaintiffs' own allegations
11  indicate that Peri only entered into the PDA within the past year, while Plaintiffs entered into
12  their agreements six to seven years ago.  This makes it completely plausible, if not likely, that the
13  County was under pressure to find enough contractors to complete the bypass in a timely manner,
14  and that agreeing to Peri's zoning change request was the expedient way to obtain Peri's services.
15  Again, there are no claims of fraud, bribery, or other improper favoritism.  Moreover, Plaintiffs
16  do not claim they themselves petitioned the Board for zoning changes or variances and that such
17  requests were denied, so they have not even shown that they are fundamentally similarly situated
18  to Peri.  And the fact that Peri must provide TDR under the PDA if it fails to timely complete the
19  required improvements shows that Peri and Plaintiffs were not treated differently.  Peri agreed to
20  complete certain additional improvements—improvements that were not born of the impact of
21  Peri's own developments—rather than purchase TDR for the road construction, and the Board
22  approved the zoning change to permit this arrangement.  The Board's actions easily pass the
23  rational basis test under the Equal Protection Clause.

24      **4.**    **Due Process - Unconstitutional Vagueness (Seventh Claim)**
25      Plaintiffs allege the provisions of the DCC implementing the TDR system are

unconstitutionally vague under the Due Process Clause, because they "fail[] to establish any reasonably ascertainable standards to determine how compliance can be achieved with respect to property in Douglas County designated as Receiving Area . . . ." (Compl. ¶ 64). Plaintiffs identify no particular provision of the DCC or explain why it is vague. The common allegations in the Complaint indicate no vagueness issue. Moreover, Plaintiffs allege nowhere in the Complaint that the Board has denied any of their applications or otherwise punished them for failure to comply with an allegedly vague provision of the DCC. As such, Plaintiffs' vagueness claim not only fails under Rule 12(c), but Plaintiffs' very standing to bring a vagueness claim is doubtful. The Court dismisses this claim, with leave to amend.

### B. "Police Power" Violations (Fourth Claim)

Plaintiffs allege the County has "unlawfully relinquished its constitutional police power by contract and such actions are therefore void under the United States Constitution." (Compl. ¶ 55). It is difficult to know what to make of this claim. No law is cited indicating any particular constitutional provision or standard to apply. It does not appear that any section of the Constitution requires a municipality to carry out its police powers in any particular way. The Constitution, as it applies to the States and their political subdivisions, is for the most part a guarantee of negative liberties. *See* U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."). Of course, a state official may not violate due process or other rights, but those claims are separately pled.

Plaintiffs attack the PDA as impermissible "contract zoning." A few eastern states have prohibited the practice of a zoning authority contracting with private parties for zoning changes directly or conditionally, based on state statutes preventing it or on the state supreme court's view of the proper use of the state's police powers. *See Carlino v. Whitpain Investors*, 453 A.2d 1385, 1387–88 (Pa. 1982) (collecting cases from Pennsylvania and New Jersey). The California Court

of Appeals, after noting that the states were at odds over the propriety of the practice, has rejected the concept as a barrier to the latitude afforded zoning authorities. *See Scrutton v. Sacramento Cnty.*, 79 Cal. Rptr. 872, 877–78 (Ct. App. 1969).  The *Scrutton* court noted that a zoning authority necessarily retained its ability to re-zone the relevant land in the future, and that ordinary principles of due process, and not the underlying contract related to the original zoning accommodation, would restrain the zoning authority in such cases. *See id.* at 878.  Because this was a possibility, such a contract "entails neither a formal nor a practical surrender of the police power." *Id.*  As here, the zoning authority did not purport to bargain away its continuing power to zone the relevant property. *See id.* at 877–78.  The Nevada Supreme Court has not used the phrase "contract zoning," but it has ruled that county boards may enact zoning ordinances that allow a commission to waive otherwise required development standards. *See Kay v. Nunez*, 146 P.3d 801, 803 (Nev. 2006) (citing Nev. Rev. Stat. § 278.315(1)).  The Court dismisses this claim.

### C. Declaratory Relief (Fifth Claim)

This claim is redundant with the first and third claims, as it simply seeks declaratory relief for the substantive due process and equal protection violations alleged therein.  Declaratory relief has been generally prayed for and remains available under the first and third claims.  The Court dismisses this claim.

### D. Declaratory and Injunctive Relief (Sixth Claim)

This claim is redundant with the first claim, as it simply seeks declaratory and injunctive relief for the substantive due process violations alleged therein.  Declaratory and injunctive relief have been generally prayed for and remain available under the first claim.  The Court dismisses this claim.

### E. Declaratory Relief (Eighth Claim)

Plaintiffs seek a declaration that the PDA is void because it violates NRS sections 278.0201 and 278.0203.  Section 278.0201 permits governing bodies to enter into development

agreements with private owners of land. *See* Nev. Rev. Stat. § 278.0201(1). Such an agreement "must describe the land which is the subject of the agreement and specify the duration of the agreement, the permitted uses of the land, the density or intensity of its use, the maximum height and size of the proposed buildings and any provisions for the dedication of any portion of the land for public use." *Id.* Plaintiffs allege the PDA was entered into "for an unlawful purpose" and "fails to set forth the matters described in NRS 278.0201(1) . . . ." (Compl. ¶ 68). Building a road is not unlawful, and Plaintiffs do not allege which matters are not described in the PDA as required by the statute. Also, it is highly doubtful that an agreement that fails to comply with this statute is void, although it may be voidable by the developer or the Board if a conflict arises over details required to be in the agreement by statute but which are absent.

Next, section 278.0203 permits a governing body to approve an agreement by ordinance if it is consistent with the Master Plan. *See* Nev. Rev. Stat. § 278.0203. There is no mandatory language in this statute apart from the requirement to record original agreements with the county recorder or the recorder of Carson City. Plaintiffs affirmatively allege that Defendants complied with this statute when they passed the Ordinance adopting the PDA, because that Ordinance amended the Master Plan itself such that the PDA complied with it. (*See* Compl. ¶¶ 39–41). The Court dismisses this claim.

      F.     **Fifth Amendment (Takings) (Ninth Claim)**

Although entitled "State Law Taking," the claim invokes only the "[T]akings [C]lause of the Fifth Amendment to the United States Constitution." (Compl. ¶ 72). The Takings Clause is incorporated against the states by the Fourteenth Amendment. *See Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 239 (1897).

Plaintiffs' theory is that the value of the TDR has been "taken" because the TDR are no longer needed for development in the Receiving Area and Defendants have eliminated the market for them by approving the PDA, under which Peri will be allowed to develop without TDR.

1     Plaintiffs do not appear to allege anywhere in the Complaint that the County has
2 abolished the TDR system altogether or even granted a blanket waiver with respect to the system.
3 Plaintiffs allege only that the Board has rendered its TDR useless by "demonstrating that TDRs
4 are no longer needed . . . ." (Compl. ¶ 72). The allegation that TDR "are no longer needed" is a
5 heavily rhetorical conclusion. TDR are clearly still needed according to the facts pled in the
6 Complaint. Plaintiffs (and others) still must use TDR to develop within the Receiving Area.
7 Peri does not need TDR to develop because its land is no longer in the Receiving Area. It is not
8 similarly situated with Plaintiffs because of this. But even still, Peri will need to use TDR if it
9 does not complete the additional improvements it agreed to in the PDA. Peri had the foresight to
10 bargain with the Board to have its land re-zoned to avoid the need to buy TDR. Nothing in the
11 Complaint indicates anything besides arms-length negotiations and applications. There is no
12 allegation that Plaintiffs attempted such a re-zoning maneuver but were rebuffed. Moreover,
13 Plaintiffs do not allege having paid for the TDR involuntarily. Plaintiffs paid for the TDR in
14 exchange for the right to perform certain developments. Those development rights are not
15 alleged to have been taken.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Judgment on the Pleadings (ECF No. 19) is GRANTED, with leave to amend the first, third, and seventh claims.

IT IS SO ORDERED.

Dated: This 30th day of March, 2011.

_____
ROBERT C. JONES
United States District Judge